In The
# United States Court of Appeals
For The Fourth Circuit

## JOHNATHAN HATCH; MARK F. DVORSKY; KELLY EPPERSON,

*Plaintiffs – Appellants,*

v.

## MICHAEL A. DEMAYO; LAW OFFICES OF MICHAEL A. DEMAYO, L.L.P; THE LAW OFFICES OF MICHAEL A. DEMAYO, P.C.; JASON E. TAYLOR; LAW OFFICES OF JASON E. TAYLOR, P.C.; BENJAMIN T. COCHRAN; HARDISON & COCHRAN, PLLC; CARL B. NAGLE; NAGLE & ASSOCIATES, P.A.; JOHN J. GELSHENEN, JR.; DAVIS & GELSHENEN, LLP; MARK I. FARBMAN; MARK FARBMAN, P.A.; TED A. GREVE; TED A. GREVE & ASSOCIATES, P.A.; CHRISTOPHER THOMAS MAY; ESTWANIK ANY MAY, P.L.L.C.,

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

———————

## BRIEF OF APPELLEES

———————

Reid C. Adams, Jr.
Jonathan R. Reich
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, North Carolina 27101
(336) 721-3600

David Coats
BAILEY & DIXON
434 Fayetteville Street, Suite 2500
Raleigh, North Carolina 27601
(919) 828-0731

*Counsel for Appellees*

Bradley M. Risinger
Matthew Nis Leerberg
Troy D. Shelton
Jeffrey R. Whitley
FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina 27611
(919) 755-8700

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__    Caption: __Johnathan Hatch v. Michael DeMayo__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Michael A. DeMayo__
(name of party/amicus)


who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich          Date: May 12, 2021

Counsel for: Michael A. DeMayo

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__    Caption: __Johnathan Hatch v. Michael DeMayo__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Law Offices of Michael A. DeMayo, LLP__
(name of party/amicus)

_____

who is _____ an Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?  ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Law Offices of Michael A. DeMay LLP

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- *Counsel has a continuing duty to update the disclosure statement.*

No. <u>21-1480</u>      Caption: <u>Johnathan Hatch v. Michael DeMayo</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>The Law Offices of Michael A. DeMayo, P.C.</u>
(name of party/amicus)

_____

who is _____<u>an Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                      ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?             ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?             ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich               Date:     May 12, 2021

Counsel for: Law Offices of Michael A. DeMay PC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1480        Caption: Johnathan Hatch v. Michael DeMayo

Pursuant to FRAP 26.1 and Local Rule 26.1,

Jason E. Taylor
(name of party/amicus)



who is _____ an Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation?                    ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
       party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
       caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
       corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational
       victim of the criminal activity and (2) if an organizational victim is a corporation, the
       parent corporation and any publicly held corporation that owns 10% or more of the stock
       of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Jason E. Taylor

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1480     Caption: Johnathan Hatch v. Michael DeMayo

Pursuant to FRAP 26.1 and Local Rule 26.1,

Law Offices of Jason E. Taylor, P.C.
(name of party/amicus)

who is _____ an Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Law Offices of Jason E. Taylor, P.C.

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-1480_    Caption: _Johnathan Hatch v. Michael DeMayo_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Benjamin T. Cochran_
(name of party/amicus)

who is _____ an Appellee _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?              ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?              ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich _____    Date: _____ May 12, 2021 _____

Counsel for: Benjamin T. Cochran _____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>21-1480</u>    Caption: <u>Johnathan Hatch v. Michael DeMayo</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Hardison & Cochran, PLLC</u>
(name of party/amicus)

who is <u>an Appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                ☐YES☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich _____        Date: _____ May 12, 2021 _____

Counsel for: Hardison & Cochran, PLLC _____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__       Caption: __Johnathan Hatch v. Michael DeMayo__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carl B. Nagle__
(name of party/amicus)

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                    ☐ YES ☑ NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich _____    Date: ____ May 12, 2021 ____

Counsel for: Carl B. Nagle _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1480        Caption: Johnathan Hatch v. Michael DeMayo

Pursuant to FRAP 26.1 and Local Rule 26.1,

Nagle & Associates, P.A.
(name of party/amicus)

who is _____ an Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
*If yes, identify entity and nature of interest:*

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
*If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:*

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
*If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.*

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
*If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.*

Signature: /s/ Jonathan R. Reich       Date:   May 12, 2021

Counsel for: Nagle & Associates, P.A.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-1480_    Caption: Johnathan Hatch v. Michael DeMayo

Pursuant to FRAP 26.1 and Local Rule 26.1,

John J. Gelshenen
(name of party/amicus)

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:      May 12, 2021

Counsel for: John J. Gelshenen

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__    Caption: __Johnathan Hatch v. Michael DeMayo__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Davis & Gelshenen, LLP__
(name of party/amicus)

_____

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                 ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                  ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Davis & Gelshenen, LLP

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__        Caption: __Johnathan Hatch, et al. v. Michael A. DeMayo, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mark I. Farbman__
(name of party/amicus)

_____

 who is _____Defendant/Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Troy D. Shelton                     Date:        5/11/2020

Counsel for: Mark I. Farbman

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 21-1480          Caption: Johnathan Hatch, et al. v. Michael A. DeMayo, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Mark Farbman, P.A.
(name of party/amicus)


 who is _____Defendant/Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                             ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Troy D. Shelton          Date:    5/11/2020

Counsel for: Mark Farbman, P.A.

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1480     Caption: Johnathan Hatch v. Michael DeMayo

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ted A. Greve
(name of party/amicus)


who is _____ an Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:



3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                      ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                       ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?       ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Ted A. Greve

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__    Caption: Johnathan Hatch v. Michael DeMayo

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ted A. Greve & Associates, P.A.
(name of party/amicus)

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?      ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Ted A. Greve & Associates, P.A.

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-1480_    Caption: _Johnathan Hatch v. Michael DeMayo_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Christopher T. May_
(name of party/amicus)

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?      ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich _____      Date: ____ May 12, 2021 ____

Counsel for: Christopher T. May _____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1480__        Caption: _Johnathan Hatch v. Michael DeMayo_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Estwanik & May, P.L.L.C._____
(name of party/amicus)

_____

who is _____an Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                  ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?              ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?              ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan R. Reich                    Date:    May 12, 2021

Counsel for: Estwanik & May, P.L.L.C.

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................iv

INTRODUCTION .............................................................................................1

STATEMENT OF THE CASE..............................................................................2

    I.    Plaintiffs' Single Cause of Action.......................................................4

    II.   The DMV-349s at Issue ....................................................................4

    III.  The Lawyers Obtained Reports from Local Law Enforcement or
          Data Aggregators, but Original Sources Are Unknown .......................5

    IV.  Procedural Posture..............................................................................7

SUMMARY OF THE ARGUMENT ....................................................................8

ARGUMENT ....................................................................................................9

    I.    The Lawyers Received No Information from a State DMV and
        Cannot Be Liable Under the DPPA .....................................................9

        A.    The Supreme Court, the District Court, and the Plaintiffs
             all agree that the Lawyers obtained the information at issue
             from public sources....................................................................9

        B.    The DPPA Was Not Violated Because the Source of
             Personal Information Was Not the NCDMV...........................10

        C.    The District Court noted the legislative history of the
             DPPA, and followed two Supreme Court cases, when it
             required the source of the information to be the NCDMV.......11

            i.    Courts Consistently Find the DPPA Applies Only
                 When Information is Obtained from a State DMV ........13

ii.    Conversely, When Individuals Voluntarily Disclose Their Personal Information, There Is No Violation of the DPPA ..................................................................14

iii.    Plaintiffs slippery slope argument [Opening Br. pp. 22-24] should be rejected; courts have consistently found that this majority interpretation of the DPPA does not "gut" its protections..........................................15

D.    Plaintiffs fault the District Court for following a "judge-made restriction on the scope of the DPPA" that cabins the Act's coverage to information held at, and obtained from, a state DMV. [Opening Br. p. 17]..............................................16

E.    The Lawyers cannot be liable because they did not obtain personal information from the NCDMV ..................................18

1.    Plaintiffs are incorrect; a driver's license or registration card in the motorist's possession is not a "motor vehicle record" under the DPPA..................................................................18

2.    A driver's license in possession of a motorist is no longer a "motor vehicle record" .................19

F.    The District Court correctly rejected Plaintiffs' matching theory of DPPA liability ..........................................21

II.    The DPPA cannot unring a bell; once a driver's name and address, even if protected when accessed in one database, is obtained from another public source, it will forever be public information ........................................................................23

III.    The Lawyers did not *knowingly* obtain personal information "from a Motor Vehicle Record"..........................................25

IV.    The legislative history shows that Congress did not intend to interfere with the public's ability to obtain information from non-DMV sources through existing State public-records laws..................29

V.      Defendants obtained the public records for a permitted purpose .......30

VI.     The DPPA violates the First Amendment Rights of the Lawyers ......34

        A.      Introduction to First Amendment Argument ...........................34

        B.      The First Amendment protects the Lawyers' right to
                obtain these public records to send direct mail letters to
                Plaintiffs .................................................................................36

        C.      Obtaining public records is protected under the First
                Amendment, not unprotected conduct as Plaintiffs argue ........43

        D.      The DPPA serves as a content-based restriction on speech
                that cannot survive strict scrutiny ...........................................47

        E.      The Lawyers' actions – using government records to send
                targeted mail – has long been protected by the First
                Amendment ..............................................................................49

        F.      Section 2721(b)'s Exceptions Demonstrate the DPPA is
                Content-Based ..........................................................................50

        G.      Appellants argue for rational basis review, but the
                proposed ban on Lawyer direct mail advertising requires
                strict scrutiny ...........................................................................53

CONCLUSION ............................................................................................55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Vertafore, Inc.*,
2021 WL 3148870 (S.D. Tex. June 14, 2021).............................35

*American Association of Political Consultants, Inc. v. FCC*,
923 F.3d 159 (4th Cir. 2019), *affirmed*,
*Barr*, 140 S. Ct. 2335 (2020) ..............................................36, 52

*Andrews v. Sirius XM Radio*,
932 F.3d 1253 (9th Cir. 2019) ....................................19, 20, 22, 29

*Ark. State Police v. Wren*,
491 S.W.3d 124 (Ark. 2016) ...............................................22

*Ark. Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987)........................................................34

*Barr v. AAPC*,
140 S. Ct. 2335 (2020)...........................................51, 52, 53

*Bd. of Educ. v. Pico*,
457 U.S. 853 (1982).......................................................37

*Bond v. U.S.*,
134 S. Ct. 2077 (2014)....................................................33

*Brown v. Entertainment Merchants Association*,
564 U.S. 786 (2011).......................................................53

*Courthouse News Service v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) .............................................46, 47

*Cowley v. Pulsifer*,
137 Mass. 392 (1884) .....................................................44

*Cox Broadcasting Corp. v. Cohn*,
420 U.S. at 494-6 ................................................................44

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014).............................................................30

*Dahlstrom v. Sun-Times Media Inc.*,
777 F.3d 937 (7th Cir. 2015) .....................................13, 14

*Davis v. Mich. Dep't of Treasury*,
489 U.S. 803 (1989)..........................................................20

*Deicher v. City of Evansville, Wisconsin*,
545 F.3d 537 (7th Cir. 2008) .....................................13, 14

*Doe v. Chao*,
511 F.3d 461 (4th Cir. 2007) ..........................................29

*Doe v. Public Citizen*,
749 F.3d 246 (4th Cir. 2014) ..........................................47

*Estate of Wayne Jones v. City of Martinsburg*,
961 F.3d 661 (4th Cir. 2020) ..........................................33

*Fields v. City of Philadelphia*,
862 F.3d 353 (3d Cir. 2017) ............................................45

*Fla. Star v. B.J.F.*,
491 U.S. 524 (1989)..........................................................32

*Flores-Figueroa v. United States*,
556 U.S. 646 (2009).....................................................27, 28

*Fontanez v. Skepple*,
563 Fed. Appx. 847 (2014)......................................14, 19, 22

*Fusaro v. Cogan*,
930 F.3d 241 (4th Cir. 2019) .....................................45, 46, 47

*Garey v. Farrin*,
    2017 WL 4357445 (2017) ...................................................................32

*Harrhuis v. Cheek*,
    255 N.C. App. 471 (2017) ...............................................................32

*Hartford Cas. Ins. Co. v. Ted A. Greve & Assoc., PA*,
    742 Fed. Appx. 738 (4th Cir. 2018) .........................................4, 31

*Henry v. Edmisten*,
    315 N.C. 474 (1986) .......................................................................19

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978).............................................................................32

*James v. City of Boise, Idaho*,
    136 S. Ct. 685 (2016)......................................................................17

*Kresal v. Secura Ins. Holdings, Inc.*,
    No. 17-CV-766-WMC,
    2018 WL 2899694 (W.D. Wis. June 11, 2018)......................21, 22

*Lane v. Franks*,
    134 S. Ct. 2369 (2014).............................................................. 36-37

*Lucas v. Moore*,
    No. 2:18-CV-582, 2019 WL 4346344 (S.D. Ohio Sept. 12, 2019)..............22

*Maracich v. Spears*,
    570 U.S. 48, 133 S. Ct. 2191 (2013) .......................................*passim*

*McFadden v. United States*,
    576 U.S. 186 (2015).......................................................................28

*Mullins v. Commonwealth of Virginia*,
    2007 WL 120835 (W.D. Va. Jan. 9, 2007).....................................19

*NAACP v. Alabama*,
    357 U.S. 449 (1958).......................................................................23

*News & Observer Pub. Co. v. Poole*,
  412 S.E.2d 7 (N.C. 1992) ...................................................................24

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978)...........................................................................44

*O'Brien v. Quad Six, Inc.*,
  219 F. Supp. 2d 933 (N.D. Ill 2002)...............................10, 14, 19

*Ocasio v. River Bay Corporation*,
  2007 WL 1771770 (S.D.N.Y. 2007) .....................................14, 19

*Ostergren v. Cuccinelli*,
  615 F.3d 263 (4th Cir. 2010) .........................................34, 43, 47

*Pavone v. Law Offices of Anthony Mancini, Ltd.*,
  205 F. Supp. 3d 961 (N.D. Ill. 2016).......................................26, 27

*Pavone v. Meyerkord & Meyerkord, LLC*,
  118 F. Supp. 3d 1046 (N.D. Ill. 2015)..........................................22

*Philadelphia Ins. Co. v. Findley*,
  395 F.3d 1046 (9th Cir. 2005) .......................................................18

*Pichler v. UNITE*,
  446 F. Supp. 2d 353 (E.D. Pa. 2006)...........................................16

*Pichler v. UNITE*,
  585 F.3d 741 (3d Cir. 2009) ...................................................15, 16

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992)...........................................................................50

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015).................................................................*passim*

*Rehaif v. United States*,
  139 S. Ct. 2191 (2019)................................................................27, 28

*Reno v. Condon*,
528 U.S. 141 (2000)..........................................9, 12, 17, 18

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
487 U.S. 781 (1988)...........................................................48

*Rose v. Arkansas State Police*,
479 U.S. 1 (1986)...............................................................29

*Rushford v. New Yorker Magazine, Inc.*,
846 F.2d 249 (4th Cir. 1988) ..........................................44

*Schaumburg v. Citizens for a Better Environment*,
444 U.S. 620 (1980)...........................................................48

*Secretary of State of Maryland v. Joseph H. Munson Co.*,
467 U.S. 947 (1984)...........................................................48

*Siegler v. Best Buy*,
519 F. App'x 604 (11th Cir. 2013)...................................22

*Smith v. City of Cumming*,
212 F.3d 1332 (11th Cir. 2000) .......................................45

*Soderberg v. Carrion*,
999 F.3d 962 (4th Cir. 2021) ....................................*passim*

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................................................43, 44

*Stephens v. Cty. of Albemarle*,
524 F.3d 485 (4th Cir. 2008) ..........................................37

*Thomas v. Chicago Park Dist.*,
534 U.S. 316 (2002)...........................................................52

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994)...........................................................52

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
    489 U.S. 749 (1989)......................................................................23

*U.S. v. Curry*,
    965 F.3d 313 (4th Cir. 2020) ......................................................33

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021)................................................................29

*Virmani v. Presbyterian Health Servs. Corp.*,
    515 S.E.2d 675 (N.C. 1999) .......................................................24

*Weitgenant v. Patten*,
    No. CV 14-255 ADM/FLN,
    2016 WL 1449572 (D. Minn. Apr. 12, 2016) .............................25

*Whitaker v. Appriss, Inc.*,
    266 F. Supp. 3d 1103 (N.D. Ind. 2017)......................................22

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I .................................................................*passim*

U.S. CONST. amend. X ............................................................17

U.S. CONST. amend. XIV ........................................................23

## STATUTES

5 U.S.C. § 552a(a)(4)..............................................................20

18 U.S.C. § 922(g).................................................................28

18 U.S.C. § 1028A(a)(1)..........................................................27

18 U.S.C. § 2271...................................................................11

18 U.S.C. §§ 2721, *et. seq.*.......................................................*passim*

18 U.S.C. § 2721(a) ...............................................................34

18 U.S.C. § 2721(b) ...............................................34, 47, 50, 54

18 U.S.C. §§ 2721(b)(1-14) ...........................................................................................18

18 U.S.C. § 2721(b)(1) .......................................................................................24, 25, 52

18 U.S.C. § 2721(b)(2) ...................................................................................................35

18 U.S.C. § 2721(b)(4) .............................................................................................18, 30

18 U.S.C. § 2721(b)(6) ...............................................................................35, 43, 47, 50

18 U.S.C. § 2721(b)(7) .......................................................................................35, 50, 51

18 U.S.C. § 2721(b)(8) ...................................................................................................35

18 U.S.C. § 2721(b)(10) ..........................................................................................35, 51

18 U.S.C. § 2721(b)(14) ..........................................................................................30, 32

18 U.S.C. § 2722 .............................................................................................................20

18 U.S.C. § 2724 .....................................................................................................34, 51

18 U.S.C. § 2724(a) .......................................................................................................25

18 U.S.C. § 2724(b) .......................................................................................................48

N.C. Gen. Stat. § 20-4.01(33b) .......................................................................................4

N.C. Gen. Stat. § 20-28.3(e1) .......................................................................................51

N.C. Gen. Stat. § 20-29 .................................................................................................19

N.C. Gen. Stat. § 20-30 .................................................................................................19

N.C. Gen. Stat. § 20-42 .................................................................................................31

N.C. Gen. Stat. § 20-166(e) ..........................................................................................31

N.C. Gen. Stat. § 20-166.1(e) .........................................................................................4

N.C. Gen. Stat. § 20-166.1(h) .........................................................................................4

N.C. Gen. Stat. § 20-166.1(i) ...................................................................4, 25, 31

N.C. Gen. Stat. §§ 132-1, *et seq.*...............................................................37

N.C. Gen. Stat. § 132-1(b) ...........................................................................25

N.C. Gen. Stat. § 132-6(b) .............................................................................5

## OTHER AUTHORITIES

"Attack On the Post Office, Charleston, S.C.," *The News Media and the Making of America, 1730-1865*, accessed August 1, 2021; https://americanantiquarian.org/earlyamericannewsmedia/items/show/48............49

Crutis, The Curious History of Attempts to Suppress Antislavery Speech, Press, and Petition in 1835-37, 89 Nw. U. L. Rev. 785 (1994-95)........................50

Joe Regalia, *The Common Law Right to Information*, 18 Rich. J.L. & Pub. Int. 89 (2014) ........................................................44

*North Carolina Auto Accident and Insurance Law, available* at https://www.amazon.com/North-Carolina-Auto-Accident-Insurance/dp/1483417557.................................................................38

*Protecting Driver Privacy*, 1994 WL 212698 (statement of Rep. Moran)..............20

Register of Debates in Congress, Report of the Minority of Committee on Post Offices and Post Roads on the President's Message, 24th Cong. 1st Sess. (1836) .........................................................................49

Suspect in Actress Murder Hired Private Eye to Get Her Address, Los Angeles Times, July 21, 1989, available at https://www.latimes.com/archives/la-xpm-1989-07-21-mn-4387-story.html.........54

H.R. 3365, *reprinted*, 139 Cong. Rec. 27328 (Nov. 3, 1993) .................................11

140 Cong. Rec. 20889 (Aug. 10, 1994) ...................................................................11

140 Cong. Rec. 23573 (Aug. 21, 1994) ...................................................................30

Public L. No. 103-322 (Sept. 13, 1994).................................................................11

**INTRODUCTION**

This case is about attorney advertising, and access to public records – police accident reports – to facilitate that advertising. It began as a putative class action seeking to fundamentally reshape the personal injury practice of plaintiff's counsel throughout North Carolina and radically reduce the access to justice of countless North Carolinians in all 100 counties. The district court denied class certification, but Plaintiffs have pressed on with a strained and stretched interpretation of the relevant statute, the Driver's Protection Privacy Act, 18 U.S.C. § 2721, et. seq. ("DPPA"). That interpretation is untethered to the legislative history and would be unconstitutional if correct. The district court correctly denied summary judgment for Plaintiffs and granted summary judgment to the Lawyers.

Plaintiffs advanced a novel statutory theory at odds with the Congressional record and numerous other courts. Plaintiffs read the DPPA to permit unfettered access to police accident reports (DMV-349s) by private corporations like insurance companies, but to subject lawyers to crushing financial liability for using the same public information to counter the speech of insurers or banks.

The Lawyers' message to parties injured in an automobile accident about their rights and that a lawyer is willing to represent them even if they cannot afford one is facilitated by obtaining and using these public records. It is a message that Plaintiffs seek to silence. A ruling for the Plaintiffs will effectively close the

courthouse doors to people who do not even know there are lawyers willing to represent them.

In the litigation below, there were numerous witness affidavits submitted, 20 depositions, and 1.5 million pages of discovery produced *just by one defendant*. The district court had a fulsome record it carefully considered when it granted summary judgment to the Lawyers. This Court should affirm.

## STATEMENT OF THE CASE

When a car in North Carolina is involved in any significant automobile accident on a public road, North Carolina statutes require the responding officer (police, sheriff's deputy, or Highway Patrol) to fill out a standardized form. This form – titled DMV-349, but often called a crash report or accident report – contains basic information about the driver(s) and passenger(s) involved in the crash.

Each Plaintiff was involved in a motor vehicle accident with another driver on a public road. J.A. 396-97, 400-01, 403-04. A law enforcement officer responded to the scene, investigated the accident, and prepared a report on a standardized form. *Id*. at ¶¶ 33, 45, 57. The report was then released to the public, and used by Defendants.

Defendants are individual lawyers and their law firms (the "Lawyers") who primarily or exclusively represent plaintiffs in personal injury and wrongful death actions. Each Lawyer in this case has used direct mail with a core purpose to

encourage participation in the American judicial system, including by sending letters in connection with vindicating rights secured by North Carolina law and the federal Constitution.

Lawyers believed that they would be significantly more efficient, and thus have greater impact, if they could send targeted mailers using public records. The record below showed that crash reports have been made available by local law enforcement, in accord with State mandate, since the 1990s. The same records were also compiled and sold by several third-party vendors. Most of the Lawyers obtained the driver information from Digital Solutions of the Carolinas.

Defendants believe their actions were and are wholly legal. The North Carolina State Bar permits lawyers to send direct mail, so long as certain State Bar rules are followed. J.A. 4035. And the Lawyers did not know the origin or source of the information contained in the DMV-349 records at issue; all Lawyers obtained these records either from local law enforcement or from third-party data aggregators such as Digital Solutions (which also obtained the records from local law enforcement). None obtained them directly from the State DMV for their marketing efforts.

## I.     Plaintiffs' Single Cause of Action.

Plaintiffs asserted one cause of action. Plaintiffs contend that the DPPA prohibits the Lawyers from obtaining crash reports, or using those crash reports to assist in the sending of direct mail.

## II.     The DMV-349s at Issue.

State law required the responding officer to create these crash reports. N.C. Gen. Stat. § 20-166.1(e). "[R]eportable crashes" involve death, personal injury, or property damage exceeding $1,000. N.C. Gen. Stat. §20-4.01(33b). The DMV-349 requires basic information to be recorded, including drivers' names, addresses, and license numbers. *Id.* at § 20-166.1(h). Immediately upon completion, the DMV-349 becomes the public record of an event on a public highway which was responded to by a public officer. N.C. Gen. Stat. § 20-166.1(i). On two occasions, the North Carolina Attorney General has opined that the DPPA does not apply to these public records, which are made by local law enforcement and immediately released to the public at the local law enforcement's office. J.A. 4035, J.A. 4039. In a case arising from this case, this Court has already concluded that these are public records. *Hartford Cas. Ins. Co. v. Ted A. Greve & Assoc., PA*, 742 Fed.Appx. 738, 741 (4th Cir. 2018).

Most local law enforcement agencies make accident reports available in one of two ways: "across the counter" at a public information desk or posted to an online

website.  Some make them available in both ways. They do not – and cannot – require a member of the public to make any showing of entitlement or intended use. N.C.G.S. § 132-6(b); J.A. 2635, 2657, 2690; J.A. 2439; J.A. 2439; J.A. 2427-28; J.A. 4712-13.  Local law enforcement create the crash reports, decide what to redact from the reports, and then make the reports publicly available. J.A. 2427; J.A. 2432; J.A. 2449; J.A. 2691.

## III.    The Lawyers Obtained Reports from Local Law Enforcement or Data Aggregators, but Original Sources Are Unknown

The record below was undisputed that the Lawyers obtained the Plaintiffs' names and addresses from police accident reports and sent the Plaintiffs mailers. J.A. 406.  Most of the Lawyers purchased summary spreadsheets from third-party data aggregators, which were Excel spreadsheets containing the same information transcribed from the same accident reports released publicly by LEAs. J.A. 2133-34; J.A. 3911-12; J.A. 3917-18; J.A. 3930-31; J.A. 3934-36; J.A. 3941-42, 47-48;; J.A. 3956-58; J.A. 4715; J.A. 3966-69; J.A. 3974-76; J.A. 4009-10; J.A. 4018-29; J.A. 3941-42; J.A. 3977-3981; J.A. 3985-3941; J.A. 3994-4001.

The data aggregators, who obtained the crash reports from law enforcement, would also send some Lawyers the corresponding crash reports at the same time. In a few circumstances, a defendant Lawyer still obtained crash reports by sending an employee to the public information desk of a local police station and obtaining copies of the prior day's crash reports from an information officer.

There is no evidence that any Lawyer obtained, or directed anyone on their behalf to obtain, an accident report from the North Carolina Division of Motor Vehicles ("NCDMV") for marketing. See, e.g, J.A. 3908-3911; J.A. 3928-30; J.A. 3914-17; J.A. 4716; J.A. 6312. Any "obtainment" and alleged disclosure of the Plaintiffs' name and address could never have been a violation of the DPPA, because there is no evidence in the record that Defendants obtained information directly from the NCDMV for marketing. J.A. 3880-4034. The district court correctly found that this lack of evidence was dispositive. J.A. 6312, 16-17, 19-20.

While the Lawyers obtained the accident reports from law enforcement and data aggregators, it cannot be determined from the accident reports the actual source of the Plaintiffs' personal information on the accident reports themselves. The name, address, and other information contained in a crash report can be collected by an officer by (1) asking the driver and passengers for that information, (2) having that information written down by the individuals, (3) copying information from a driver's license card or registration papers, or (4) auto-populating the fields from a state database. J.A. 6309-10; J.A. 4711-12; J.A. 2432; J.A. 2448; J.A. 2541-2545, 49-54, 2569-71.

Once completed and published, it is impossible to tell from the face of a crash report what the original source of the information was. J.A. 4711; J.A. 2424-25; J.A. 2439; J.A. 2448; J.A. 2569-70, 2604-05, 2611, 2624-30. As a result, no Lawyer

knew—or could have known—the source of any personal information on an accident report (and the record is plain that no Plaintiff forecasted any evidence on this point). J.A. 2124-28; J.A. 2129-36; J.A. 3910-12; J.A. 3915-16, 18-22; J.A. 3929-31; J.A. 3934-36, 38; J.A. 3941-42, 47-48.

## IV. Procedural Posture

Plaintiffs sought to certify a class against each Defendant, seeking statutory damages of $2,500 for each class member, as well as an injunction against future DPPA violations. J.A. 407.

Finding that it was impossible to determine the source of the personal information on an accident report (and thus making it impossible to determine whether the DPPA was violated for any class member), the district court denied class certification. J.A. 5981-86, 92. Judge Loretta Biggs then granted complete summary judgment to the Lawyers, relying heavily on the fact that they had only obtained information from local law enforcement or data aggregators, and not from the NCDMV. J.A. 6319-20.

## SUMMARY OF THE ARGUMENT

Joining nearly every other court across the country to have considered the question, the district court held that only those who obtain personal information *from a State DMV* can be liable under the DPPA. Since it is undisputed that Defendants did not do so, they did not violate the DPPA. This result is required by Supreme Court precedent and the detailed legislative history of the statute.

Further, the factual record precludes liability. Even if the DPPA were interpreted to protect identifying information in an accident report released to the public by law enforcement, the evidence shows that it is impossible to identify the source of the information on an accident report. Thus, it was impossible for Defendants to *knowingly* obtain personal information "from a motor vehicle record" given the many sources from which police officers gather information to complete accident reports.

Finally, Plaintiffs' version of the DPPA fails because it would violate the First Amendment. The government cannot publicly release information, but then pick and choose which speakers can use it based on who they are or what they have to say.

The judgment should be affirmed.

## ARGUMENT

**I. The Lawyers Received No Information from a State DMV and Cannot Be Liable Under the DPPA.**

**A. The Supreme Court, the District Court, and the Plaintiffs all agree that the Lawyers obtained the information at issue from public sources.**

As the district court observed, "[t]he Supreme Court has held that the DPPA regulates the resale and redisclosure of personal information "by private persons who have obtained that information from a state DMV." (*citing Reno v. Condon*, 528 U.S. 141, 146 (2000)). J.A. 6313. The record in this case firmly establishes that the Lawyers did not contact any State DMV, nor seek or obtain any personally-identifying information from any State DMV for marketing purposes.

J.A. 3908-3911; J.A. 3928-30; J.A. 3914-17; J.A. 4716; J.A. 6312; J.A. 3880-4034; J.A. 2124-28; J.A. 2129-36; J.A. 3910-12; J.A. 3915-16, 18-22; J.A. 3929-31; J.A. 3934-36, 38; J.A. 3941-42, 47-48; J.A. 6312, 16-17, 19-20. Rather, the record here overwhelmingly showed a lack of State DMV involvement. As a result, Plaintiffs concede that North Carolina law enforcement agencies prepare DMV-349s as part of accident investigations, release these reports to the public, and the Lawyers obtained names and addresses through this public resource. Opening Br., p. 4. Appellants' theory of the case seeks a judicial revision of the statute. As the district court found, the Appellants "do not allege . . . that Defendants collected these reports from a state DMV." J.A. 2312.

**B. The DPPA Was Not Violated Because the Source of Personal Information Was Not the NCDMV.**

The DPPA "is concerned with the source of the information -- the state, as opposed to oneself -- and not the medium by which it is conveyed – a driver's license, a passport, credit card or the spoken word." *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933 (N.D. Ill. 2002). Congress never intended the DPPA to regulate the many other potential sources of personal information. If it had, it would have drafted a different statute. The DPPA "seeks to control the dissemination of information collected using the coercive power of the state." *Id.* at 935. The recipient of the information is of no concern under the DPPA, only that the origination of the release of information is not from the State itself.

There was no dispute on the record before the district court that every crash report at issue was a record prepared by a law enforcement agency. Each crash report, J.A. 2099-2116, was a public record that documented a public event – a car wreck on a public road. None of the crash reports were issued by the NCDMV.

None of the crash reports were ever knowingly or unknowingly disclosed by any officer, employee, or contractor of the NCDMV to the Lawyers. This Court's inquiry can stop here.

**C.    The District Court noted the legislative history of the DPPA, and followed two Supreme Court cases, when it required the source of the information to be the NCDMV.**

The plain language of the DPPA is unambiguous: if the personal information was not disclosed directly by a DMV, then there cannot be a violation of the DPPA. This requirement is borne out by the legislative history of the DPPA.

The original House-passed bill included language in the "cause of action" section of the statute covering information "derived" from a motor vehicle record, suggesting that privacy extended beyond the motor vehicle record itself. (proposed 18 U.S.C. 2271); H.R. 3365, *reprinted*, 139 Cong. Rec. 27328 (Nov. 3, 1993) (emphasis added); J.A. 2015; J.A. 2354.  That language was struck by the conferees. 140 Cong. Rec. 20889 (Aug. 10, 1994) ("Senate section 3101-03, Driver's Privacy Protection Act, recede to House sections 2901-03 *with modifications*.") (emphasis added) and Public L. No. 103-322 (Sept. 13, 1994).  The legislative evidence rebuts any argument that the statutory protection follows the personal information.  Instead, elimination of the word "derived" means that the information must come directly, rather than indirectly, from the DMV.

As the district court noted, when the Supreme Court examined the DPPA's legislative history, it observed that Congress sought to address both "a growing threat from stalkers and criminals who could acquire personal information from state DMVs" and "uneasiness around 'the States' common practice of selling personal

information to business engaged in direct marketing and solicitation." J.A. 2314 (*citing Maracich v. Spears*, 570 U.S. 48, 57 (2013)). The district court found that "[s]uch concerns, while not necessarily exhaustive, suggest that a reading of the statute as applying only to direct DMV interactions is well-founded." J.A. 2314.

The district court's interpretation is underscored by the exact portion of *Maracich* cited by Appellants – where the Supreme Court addresses an argument raised by a defendant attorney but concludes it "does not resolve whether he is entitled to *access the state DMV database* for that purpose under the DPPA." Opening Brief, pp. 50-51, *quoting Maracich*, 570 U.S. at 71 (emphasis added)].

This passage was not merely dicta either. *Maracich* was the second time the Supreme Court confirmed the plain language of the text. Twenty years ago, in *Reno v. Condon,* the Court confirmed that Congress enacted the DPPA to regulate the disclosure and use of personal information obtained from a DMV because the statute "regulates the resale and redisclosure of driver's personal information by private persons *who have obtained that information from a state DMV.*" *Reno v. Condon,* 528 U.S. at 146, 120 (2000)(emphasis added). The key element is the source of the "personal information." Both *Reno* and *Maracich* confirm the text of the statute. *Reno* held specifically that the DPPA regulates the resale and redisclosure of driver's personal information by private persons who have obtained that information from a state DMV, not from any other source. *Id*. at 146. Similarly, *Maracich*, which

Plaintiffs continue to rely heavily on, is easily distinguishable: it only sanctioned the defendants for obtaining information directly from the South Carolina Department of Motor Vehicles.

### i. Courts Consistently Find the DPPA Applies Only When Information is Obtained from a State DMV.

In light of this legislative record and Supreme Court opinions, it is not surprising that courts overwhelmingly limit DPPA liability to a particular source found in the statute's text: a state DMV. The district court here followed that trend, concluding, "when defendants have not interacted with the DMV directly nor through a hired agent, courts have consistently dismissed DPPA claims." J.A. 2316.

When Courts do find a DPPA violation, the one consistent component is usually the defendant admitted it obtained the information from the DMV. *Maracich*, 133 S. Ct. at 2195-96 (2013) (attorneys admitted obtaining "personal" information from the state department of motor vehicles); *Deicher v. City of Evansville, Wisconsin*, 545 F.3d 537 (7th Cir. 2008) (police officer obtained a person's address from the state department of motor vehicles for personal use); *Dahlstrom v. Sun-Times Media Inc.*, 777 F.3d 937 (7th Cir. 2015) (media obtained personal information from the Illinois Secretary of State under a freedom of information act request).

### ii. Conversely, When Individuals Voluntarily Disclose Their Personal Information, There Is No Violation of the DPPA.

Unlike *Maracich*, *Deicher*, and *Dahlstrom*, when an individual voluntarily discloses her "personal information," and is the source of the information, the courts have rejected a cause of action for violation of the DPPA. See *Ocasio v. River Bay Corporation*, 2007 WL 1771770 (S.D.N.Y. 2007) (holding that when a defendant does not obtain a plaintiff's "personal information" from a state motor vehicle agency, but instead, obtains that information directly from the plaintiff, any later disclosure of that "personal information" is not a DPPA violation); see also *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933 (N.D. Ill 2002).

In *Fontanez v. Skepple*, 563 Fed.Appx. 847 (2014), there were allegations that a county jail corrections officer obtained a visitor's name and address from a driver's license that she voluntarily provided as proof of identification and then used that information for an improper purpose. The Court ruled that this did not violate the DPPA, because the visitor did not allege the officer obtained the information from the state department of motor vehicles.

If this Court were to do as Plaintiffs request and expand the prohibition against disclosure of "personal information" to include non-DMV records, then every time someone sends a mailing to a party who identified himself with a driver's license, there could be a cause of action if a plaintiff claimed his information originated with the DMV.

### iii. Plaintiffs slippery slope argument [Opening Br. pp. 22-24] should be rejected; courts have consistently found that this majority interpretation of the DPPA does not "gut" its protections.

Plaintiffs argue that this Court should adopt a minority rule, because if it does not, the DPPA will be construed in a way that allows local law enforcement to avoid the DPPA's scope with pernicious results. But as the district court points out, the cases that apply DPPA liability to private actors that obtain "personal information" directly from a state DMV "suggest that the DPPA, as interpreted by courts, is [effective] in preventing the particular types of privacy risks identified in *Maracich*." J.A. 2315.

The district court correctly recognized that "the *Maracich* defendants obtained personal information directly from the state DMV, *Maracich*, 570 U.S. at 52, instead of through a third party as Defendants did here." J.A. 2313. As the court noted, "this is a distinction that nearly every court interpreting the DPPA has found to be meaningful." J.A. 2313. In dealing with a statute that was carefully crafted by Congress, this is the quintessential distinction that makes a difference.

Appellants further claim that *Pichler* is a circuit court case which shows that courts find DPPA liability when the defendant has not obtained the identifying information directly from a state DMV. Opening Br. pp. 17-18; *Pichler v. UNITE*, 585 F.3d 741 (3d Cir. 2009). In noting just the opposite, the district court below stated that the *Pichler* defendants "hired an information broker to obtain records

directly from a state DMV." J.A. 2315.  Moreover, Appellants claim that the *Pichler* defendants' use of Westlaw proves they did not get information directly from the DMV.  But a close reading of *Pichler* shows otherwise.

The *Pichler* district court noted that the defendants used a database identified as WestLaw Public Records Pro; and that database required an affirmation that the user was obtaining a state record for an DPPA-exempted purpose.  *Pichler v. UNITE*, 446 F. Supp. 2d 353, 359 (E.D. Pa. 2006).  Indeed, the *Pichler* court separately found that Westlaw records demonstrated that UNITE accessed the vehicle record abstracts of the plaintiffs from the Pennsylvania Department of Transportation.  *Id.* at 360. There is no similar evidence in this case.  The Lawyers did not access NCDMV records indirectly through WestLaw, nor directly by traveling to Raleigh, NC and obtaining records in person.

> **D.  Plaintiffs fault the District Court for following a "judge-made restriction on the scope of the DPPA" that cabins the Act's coverage to information held at, and obtained from, a state DMV. [Opening Br. p. 17]**

As explained above, the district court correctly applied the sensible limitation Congress built into the DPPA's scope, requiring that the information be obtained from the NCDMV as an element of any violation. This followed the widely adopted majority rule.  But what Plaintiffs' call a "judge-made restriction" on the DPPA's "scope" was not created out of whole cloth.  It came from the Supreme Court.

This Court, like the district court below, is bound by the Supreme Court's construction of the DPPA. *See James v. City of Boise, Idaho*, [136 S. Ct. 685, 686](#) (2016) ("It is [the Supreme] Court's responsibility to say what a [federal] statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law.").

The Supreme Court first considered the DPPA in *Reno v. Condon*, South Carolina's attack on the DPPA when it was first passed. The Supreme Court reversed this Court, concluding that the DPPA's regulatory scheme applies to "the universe of entities that participate as *suppliers* to the market for motor vehicle information." *Reno*, [528 U.S. 141, 151](#) (2000) (emphasis added). The Supreme Court ruled that Congress avoided a Tenth Amendment violation when it designed the DPPA because the statute regulates *both* the States *and* "private persons *who have obtained that information from a state DMV." Id.* at 146 (emphasis added). In ruling that the DPPA survived a Tenth Amendment challenge, the Supreme Court necessarily had to determine the extent of private actor liability.

Plaintiffs now urge a judicial re-writing of the statute (eliminating the requirement of obtainment from NCDMV). They also urge this Court to ignore the plain text of *Reno*, Opening Br. p. 17 (arguing that the statement from *Reno* that "private persons who have obtained that information from a state DMV" is an isolated, dicta passage with no control over this Court). That position is misplaced.

*Reno* was carefully crafted to address one of the statute's many exceptions (§2721(b)(4) litigation exception) and tracked the statutory requirement that liability only occurs when records are obtained from a state DMV.

**E.     The Lawyers cannot be liable because they did not obtain personal information from the NCDMV.**

Plaintiffs assert that the relevant motor vehicle records are the Plaintiffs' own driver's licenses.  Opening Br., pp. 30-36.  To avoid the fact that the Lawyers did not receive information directly from the NCDMV, Plaintiffs insist that the "personal information" came from a "motor vehicle record" because the crash reports may contain information from the driver's license of each Plaintiff.

**1.     Plaintiffs are incorrect; a driver's license or registration card in the motorist's possession is not a "motor vehicle record" under the DPPA.**

Plaintiffs contend that a driver's license in the possession of a motorist is a "motor vehicle record" under the DPPA.  Opening Br. pp. 30-36.  Defendants disagree.  This is a central question which can dispose of the case.

Congress knew that a driver's license will often be used as a personal identifier. For example, rental car agencies make a photocopy of your driver's license to rent a car, which is not permitted by any exception. 18 U.S.C. 2721(b)(1-14); *Philadelphia Ins. Co. v. Findley*, <u>395 F.3d 1046, 1048</u> (9th Cir. 2005)("The Budget rental agent took Burke's license, made a photocopy of it, and asked Burke to sign the rental agreement."). If Budget had subsequently sent a letter to Mr. Burke

thanking him for using Budget for his rental car needs or offering a discount for future rentals, under Plaintiffs' theory, that would violate the DPPA and subject Budget to a $2500 statutory penalty. Despite knowing these common usages, Congress enacted the DPPA and expressly did not state that a person's driver's license was specifically subject to the protections of the DPPA.

Here, any "personal information" on the crash report came from the voluntary disclosure of Plaintiffs which was made under State law and which is part of the privilege of driving. See, e.g., *Henry v. Edmisten*, 315 N.C. 474, 496 (1986) (driving is a privilege and not a fundamental right); *Mullins v. Commonwealth of Virginia*, 2007 WL 120835, *1 (W.D. Va. Jan. 9, 2007) (no constitutional violation in failing to renew driver's license because right to drive is not a fundamental right). The disclosure was voluntary; when each Plaintiff applied for the privilege of operating a motor vehicle in North Carolina, they each agreed to abide by the laws governing such privilege, including N.C.G.S. §§ 20-29, 30, which require drivers to produce their license upon demand. As stated above, the courts in *Fontanez*, *Ocasio*, and *O'Brien*, all held that the use of information following a voluntary disclosure of one's driver's license is not actionable under the DPPA.

    2.    **A driver's license in possession of a motorist is no longer a "motor vehicle record."**

In *Andrews v. Sirius XM Radio*, the appeals court affirmed a trial court which granted summary judgment for the Defendants in a DPPA case. 932 F.3d 1253 (9th

Cir. 2019). The Ninth Circuit concluded that once a driver's license is in the motorist's possession, it is not a "motor vehicle record" under the DPPA. *Id*. at 1259-60 (reading §2722's words "in their context and with a view to their place in the overall statutory scheme," *Davis v. Mich. Dep't of Treasury*, <u>489 U.S. 803, 809</u> (1989), "we conclude that a driver's license in the possession of its owner is not a qualifying "motor vehicle record" under the DPPA."). *SiriusXM*, <u>932 F.3d at 1260</u>.

Here, the driver's licenses and registration cards were originally issued by the NCDMV, and they were issued long before the auto accidents at issue. Upon issuance, those documents immediately became the possession of *an individual*, the motorist, and not the NCDMV that issued it. *Id*. The Ninth Circuit correctly concluded that Congress intended the DPPA to operate in the same way as the Privacy Act of 1974, *see Protecting Driver Privacy*, <u>1994 WL 212698</u> (statement of Rep. Moran) ("The bill incorporates [] the intent of the 1974 Privacy Act."), which defines a "record" as "information about an individual *that is maintained by an agency.*" <u>5 U.S.C. § 552a(a)(4)</u> (emphasis added).

Appellants' testimony that their personal information was obtained from a driver's license at the scene of an accident and transcribed onto an accident report "forecloses a finding that the disclosed information was obtained from a motor

vehicle record as a matter of law."[1]  J.A. 5478-80, 89; J.A. 5513-19, 5525-27; J.A. 5548-49, 5553-57, 5566.

### F. The District Court correctly rejected Plaintiffs' matching theory of DPPA liability.

To avoid the words used by Congress when it defined "motor vehicle record", Plaintiffs developed a matching theory based on a checkbox on the crash report: because their names and addresses which were found on crash reports are the same as ones found in a DMV database, the Defendants must be liable.  Opening Br. pp. 36-37.  This argument ignores the facts and ignores the statute's text. The district court correctly ignored this argument. This Court should too.

Contrary to Plaintiffs' brief, the presence of a checked box is not undisputed evidence that the investigating officer looked at the driver's license, assuming *arguendo* that a driver's license is a motor vehicle record, which is denied. In fact, multiple law enforcement officers testified that there is no way to look at a crash report and determine the original source of the information.  J.A. 2551-52, 2570-71, 2604-05, 2611, 2624-2630; J.A. 2445, 2448; J.A. 2427; J.A. 4711; J.A. 2433; J.A. 2439; J.A. 5981-83 (finding "once a DMV-349 is completed and submitted, there is no way to tell the source of the information in the form.").

---

[1] *Kresal v. Secura Ins. Holdings, Inc.*, 2018 WL 2899694 (Jun 11, 2018).

The Ninth Circuit in *Andrews* is among a host of courts that have concluded "a driver's license in the possession of its owner is not a qualifying 'motor vehicle record' under the DPPA." *Andrews*, 932 F.3d at 1259. A number of other courts have reached the same conclusion:

> *Pavone v. Meyerkord & Meyerkord, LLC*, 118 F. Supp. 3d 1046, 1055 (N.D. Ill. 2015) (although the crash report contained personal information from plaintiffs' driver licenses, the report itself "is not 'part of,' nor is it a 'member of,' 'accessory to,' or "product of an Illinois DMV-issued motor vehicle operator's permit, vehicle registration, or ID card."). *Fontanez*, 563 F.App'x at 848-49; *Siegler v. Best Buy*, 519 F.App'x 604, 605 (11th Cir. 2013); *Lucas v. Moore*, No. 2:18-CV-582, 2019 WL 4346344, at *5 (S.D. Ohio Sept. 12, 2019); *Kresal v. Secura Ins. Holdings, Inc.*, No. 17-CV-766-WMC, 2018 WL 2899694, at *4; (W.D. Wis. June 11, 2018); *Whitaker*, 266 F. Supp. 3d at 1108; *Ark. State Police v. Wren*, 491 S.W.3d 124, 128 (Ark. 2016)).

**II.    The DPPA cannot unring a bell; once a driver's name and address, even if protected when accessed in one database, is obtained from another public source, it will forever be public information.**

The record here is unequivocal that no Lawyer and no third party aggregator obtained crash reports directly from the State DMV.  Thus, the case presents a question of the distinction between records held by a State DMV (which may be protected by the DPPA) and the universe of other local government records held in hundreds of county and city offices that might contain some data which is tangentially connected to a State DMV (but not protected by the DPPA).  Crash reports fall into that group.

Federal courts make distinctions between the same information when it originates from differing sources.  FBI rap sheets can be protected from public disclosure, even though the same information may be available through local public records. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 764 (1989) (noting "vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located at a single clearinghouse of information.")  A person's name is public information, but there are constitutional protections when associated with certain political groups. *NAACP v. Alabama*, 357 U.S. 449 (1958) (upholding NAACP's refusal to provide membership list based on right to associate, privacy, and the 14th Amendment).

Similarly, North Carolina recognizes that information can be public when held by one state agency, but private when held by another state agency. Under the North Carolina Public Records Act, once information that was formerly protected from disclosure is "placed in the public records in a governmental agency's possession," they are "open to the public." *Virmani v. Presbyterian Health Servs. Corp.*, <u>515 S.E.2d 675, 686</u> (N.C. 1999); *see also*, *News & Observer Pub. Co. v. Poole*, <u>412 S.E.2d 7, 12-13</u> (N.C. 1992) (SBI investigative reports are exempt from disclosure under N.C. Public Records Act, but after conveyance to another state commission, the copies obtained by the commission "ceased to be protected"). The North Carolina Supreme Court explained that "[t]o extend the statutory exemption to SBI investigative reports which have been placed in the public domain is like unringing a bell—a practical impossibility. When such reports became part of the records of a public agency subject to the Public Records Act, they are protected only to the extent that agency's records are protected." *Id.* at 13.

Here, Appellants contend that police departments and the Highway Patrol violate the DPPA when they publicly release accident reports in compliance with the Public Records Act because the public records law has only a "tangential relationship to a governmental purpose." Opening Br., p. 49. But the DPPA does not require a more fulsome purpose. Section 2721(b)(1) allows a police department to use "personal information" from NCDMV to prepare crash reports, and North

Carolina requires that police departments, as part of "carrying out its functions" to make those public records available to the public in a timely fashion. N.C. Gen. Stat. § 20-166.1(i).

A further "function" of a police department in North Carolina is to make the public records in its possession, by law the "property of the people," available to the public. N.C. Gen. Stat. § 132-1(b). See also, *Weitgenant v. Patten*, No. CV 14-255 ADM/FLN, 2016 WL 1449572, at *4 (D. Minn. Apr. 12, 2016) ("Th[e] [18 U.S.C. § 2721(b)(1)] exception . . . is broadly worded and reflects Congress' intent to leave essentially intact governmental agencies' ability to access and use motor vehicle record data in conducting their operations." (internal quotations omitted)).

## III. The Lawyers did not *knowingly* obtain personal information "from a Motor Vehicle Record."

If this Court accepted Plaintiffs' broad reading of the phrase "from a motor vehicle record," then the DPPA *must* be limited through its scienter requirement.

The DPPA's private cause of action lies against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record." 18 U.S.C. § 2724(a). The scienter requirement—"knowingly"—applies to the phrases that follow it. Specifically, it applies to the conduct element ("obtains, discloses or

uses personal information") as well as the source element ("from a motor vehicle record").[2]

The statutory definition of "personal information" includes name and address. Those identifiers are common and consistent with countless identifiers in this country. We all have names, addresses, and dates of birth, which are compiled and retained by countless government authorities and private companies. Our name and address is often public record.  A registered voter's name and address are public information in North Carolina. https://vt.ncsbe.gov/RegLkup/.   Similarly, many counties post unredacted property and tax records online, displaying the "personal information" of any landowner for all to see. http://tellus.co.forsyth.nc.us/lrcpwa/

The undisputed evidence showed that the Lawyers did not know that the "personal information" they had obtained and used was personal information from a motor vehicle record.  Only one court has addressed whether "knowingly" modifies the source element, and it agreed that it does.  *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 205 F. Supp. 3d 961, 967 (N.D. Ill. 2016).   As *Pavone* explains, this is the most natural reading of the statute; it is not enough to knowingly

---

[2] The Lawyers are not arguing that the scienter requirement applies to the DPPA's permissible-use requirement.  In other words, the argument on appeal is not that a cause of action only lies against a person who knows that he lacks a permissible purpose for obtaining personal information. That is more a question of willfulness than knowledge. The scienter cases cited by the Plaintiffs have limited their scienter analysis to that purpose element, *see* Opening Br. at 44-46, but that scienter issue is not before the Court.

disclose personal information that matches a "motor vehicle record." If the DPPA did not impose a knowledge requirement as a limiting principal, it would violate the DPPA to receive a person's name and address anytime the original source was a motor vehicle record, even if the recipient had no idea that was the source of the information. Rather, a DPPA plaintiff at summary judgment "must offer evidence from which a reasonable jury could find that [the defendant] knew that the information he had obtained or used was personal information from a motor vehicle record." *Id.* Any other result would be "absurd." *Id.*

Similarly, the Supreme Court has held that scienter attaches to the key element that separates wrongful conduct from innocent conduct. *See Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) ("The cases in which we have emphasized scienter's importance in separating wrongful from innocent acts are legion."); *Flores-Figueroa v. United States*, 556 U.S. 646, 647, 655 (2009) (interpreting 18 U.S.C. § 1028A(a)(1)), a statute aimed at punishing identity theft, concluding no statutory context when defendant did not "*know* the ID they unlawfully use refers to a real person, i.e., those who do not intend to cause this further harm.").

In a concurrence, Justice Scalia simplified the issue even further: when "knowingly is not limited to the statute's verbs" but is "understood to modify the

object of those verbs, there is no reason to believe it does not extend to the phrase which limits that object ('of another person')." *Id.* at 657 (Scalia, J., concurring).[3]

The DPPA should be read similarly. As in *Flores-Figueroa*, the phrase "from a motor vehicle record" limits the scope of the object ("personal information") of the statute's verbs ("obtains, uses, or discloses"). The commas surrounding the source phrase "from a motor vehicle record" do not stop the word "knowingly" from modifying that phrase. Rather, the scienter adverb modifies the verbs, their object, and the phrases limiting and explaining the object. Here, the uncontroverted evidence is that the Lawyers did not know the source of the information on the accident reports. The Lawyers testified that they did not know the source of the names and addresses on the accident reports or spreadsheets that they received. *See supra* Statement of the Case.

There is no contrary evidence in the record, nor could there be, since the source of the information on the accident reports is *unknowable*. It is even impossible even for the LEAs—who create the accident reports—to determine the source of information on the face of the accident reports. Judge Biggs ruled as much.

---

[3] Similar cases are resolved the same way. *See, e.g.*, *McFadden v. United States*, 576 U.S. 186, 191 (2015) ("Under the most natural reading of this provision, the word 'knowingly' applies not just to the statute's verbs but also to the object of those verbs . . . ."); *Rehaif*, 139 S. Ct. at 2195-96 (applying the "presumption in favor of scienter" to hold that 18 U.S.C. § 922(g) requires the government prove that a person whose status prohibits possession of a firearm knows his status).

J.A. 5983. Plaintiffs chose not to appeal that decision, so they are bound by it. *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (explaining that the mandate rule forecloses relitigation of "any issue that could have been but was not raised on appeal").

Alternative readings of the statute and record would have absurd consequences, which courts avoid. *See, e.g.*, *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021) (explaining that an interpretation of a statute that would attach liability "to a breathtaking amount of commonplace" activity "underscores the implausibility" of the proffered interpretation); *Andrews*, 932 F.3d at 1261 ("[W]e conclude that Andrews's [interpretation of the DPPA] yields the more absurd results.").

## IV. The legislative history shows that Congress did not intend to interfere with the public's ability to obtain information from non-DMV sources through existing State public-records laws.

Plaintiffs argue that the Supremacy Clause of the Constitution mandates an outcome where the DPPA defeats North Carolina's carefully crafted public records statutes. Opening Br., p. 40 (*quoting Rose v. Arkansas State Police*, 479 U.S. 1, 3 (1986)). But Congressional debate when passing the DPPA shows that Congress did not intend for the DPPA to alter the ecosystem of other, non-DMV, public records.

Rep. Edwards underscored this Congressional purpose in a statement after the DPPA's conference report text was finalized:

> "*I also want to make it very clear that this legislation should not be seen in any way as a precedent for limiting open access to other public records.*
>
> Therefore, this legislation has been crafted to apply only to specific personal information contained in motor vehicle records. It does not apply to any other system of public records maintained by State and local governments, *nor is it intended to provide any inference or precedent for limiting access to such open, public records.*"  140 Cong. Rec. 23573 (August 21, 1994) (emphasis added)

Plaintiffs proffered preemption is particularly disfavored here, because this is a setting "where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them." *CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014) (considering North Carolina statute of repose).

## V.   Defendants obtained the public records for a permitted purpose.

In *Maracich v. Spears*, 133 S. Ct. 2191 (2013), the Supreme Court was unequivocal that "[t]his case involves the interpretation of one of those exceptions, subsection (b)(4)."   Despite Plaintiffs protestations, *Maracich* leaves open that attorney advertisement or speech on issues of public concern is permissible under other subsections of the DPPA.

The DPPA provides that personal information can be disclosed under public records laws.   18 U.S.C. § 2721(b)(14) exempts personal information used "for any

other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." The Lawyers use of crash reports to seek compensatory damages has a deterrent effect under North Carolina law, and furthers public safety.

Accident reports are "specifically authorized" under North Carolina law for disclosure. N.C.G.S.A. sec. 20-166.1(i) (2016) (emphasis added) ("The reports made by law enforcement officers and medical examiners are *public records* and are *open to inspection by the general public* at all reasonable times. The Division must give a certified copy of one of these reports to a member of the general public who requests a copy and pays the fee set in G.S. 20-42.") (emphasis added). *See id.* at sec. 20-166(e)("Nothing in this section shall prohibit a law enforcement agency from providing to the *public* accident reports or portions of accident reports that are public records.") (emphasis added).

This Court, the district court, and other district courts have all agreed that the accident reports at issue are public records. *Hartford Cas. Ins. Co. v. Greve*, <u>742 Fed. Appx. 738, 740-141</u> (4th Cir. 2018) (citing N.<u>C. Gen. Stat. § 20-166.1(i)</u> ("The actions Greve is alleged to have taken – obtaining information from public records to facilitate the mailing of legal advertisements – may have been unwelcome, but they do not constitute an intrusion upon seclusion under North Carolina law. . . . As the [W.D.N.C.] district court noted, the accident reports at issue in the underlying

actions are public records under North Carolina law."); *Garey v. Farrin*, 2017 WL 4357445 *9.

This Court's recognition that the records at issue are public records is conclusive. *See Fla. Star v. B.J.F.*, 491 U.S. 524, 535 (1989) ("[w]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of the release."); *Houchins v. KQED, Inc.*, 438 U.S. 1, 16 (1978) (Stewart, J., concurring) ("[O]nce government has opened its doors" in this way, [...] the Constitution "assure[s] the public and press equal access" to the released records). Here, local law enforcement shared these records with the public. J.A. 2640-41, 2663-64; J.A. 2439; J.A. 2449; J.A. 2427-28; J.A. 4712-13.

The Lawyers use these public records to deter negligent conduct and further public safety. North Carolina recognizes that compensatory damages "deter negligent behavior" and that "a general aim of tort law is to deter" conduct which causes harm. *Harrhuis v. Cheek*, 255 N.C. App. 471, 480-81 (2017) (explaining deterrent effect of automobile liability lawsuits). The use of these records is thus authorized under North Carolina law and in furtherance of public safety under § 2721(b)(14).

Governments routinely balance public and private information. Legislative sessions can be closed, not all executive documents are subject to Freedom Of Information Act requests, and the judicial process is not entirely open. But once a

document is made public, it is public information for all. The DPPA cannot make information public for some (like car insurance companies, towing companies, and banks), but impose ruinous liability for the Lawyers who use the same information.

Public access to these crash reports allows researchers and advocacy organizations to compile and review demographic information and consider whether law enforcement are issuing citations in a racially-biased way. And, each report indicates the names of the responding officers. Thus, analysis can be as specific as one particular officer. This is important public information in a country grappling with issues at the intersection of race and policing. *See, e.g.*, *Estate of Wayne Jones v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020) (denying qualified immunity); *U.S. v. Curry*, 965 F.3d 313 (4th Cir. 2020) (en banc) (rejecting "predictive policing" based on race); *Soderberg v. Carrion*, 999 F.3d 962 (4th Cir. 2021) (reciting journalists and advocacy groups' request for public information).

The Court should adopt the Lawyers' construction of the DPPA, apply the doctrine of constitutional avoidance, and affirm. Because the Plaintiffs' arguments on the statutory construction questions will lead to a constitutional issue under the First Amendment, the Court should apply the doctrine of constitutional avoidance and adopt Lawyers' reading of the statute and the record, and affirm the court below. *Bond v. U.S.*, 134 S. Ct. 2077 (2014) (a court should "not pass upon a constitutional

question . . . if there is also present some other ground upon which the case may be disposed of."

## VI. The DPPA violates the First Amendment Rights of the Lawyers.

### A. Introduction to First Amendment Argument

This is a facial and as-applied challenge to the DPPA. Three fundamental legal principles resolve this case under the First Amendment. First, a statute is content-based if it "target[s] speech based on its communicative content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Second, a content-based speech restriction can survive constitutional scrutiny only if it is the least restrictive means of furthering a compelling governmental interest. *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). And third, once the government places information in the public domain in official public records, the First Amendment is violated when citizens are penalized for obtaining, using, or disseminating that information. *Soderberg v. Carrion*, 999 F.3d 962 (4th Cir. 2021); *Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Cir. 2010).

The DPPA imposes a ban on obtaining, using, or disclosing information from public government records. 18 U.S.C. § 2721(a); *see also* 18 U.S.C. § 2724. Congress then included a patchwork of 14 exceptions or "permissible uses" in the statute. 18 U.S.C. § 2721(b). While the statute bans and penalizes the Lawyers from using government records, it contains 14 broad exceptions. The DPPA's ban gives

favored status to insurance companies, banks, and others, but does not provide exemptions for Lawyers to use the same public information from the same government records to communicate their own message.

Some exemptions are sweepingly broad. See 18 U.S.C. § 2721(b)(2) (automotive industry), (b)(6) (insurance industry), (b)(7) (towing and recovery industry), (b)(8) (private investigations industry), (b)(10) (private toll road operators). Most prominently, Congress exempted insurance companies and their contractors from the DPPA "in connection with claims investigation activities." 18 U.S.C. § 2721(b)(6); *see, e.g., Allen v. Vertafore, Inc*., 2021 WL 3148870 (S.D. Tex. June 14, 2021) (recommending dismissal of DPPA class action because defendant was a contract vendor for the insurance industry).

Under the above-mentioned exception for insurers and their agents, car insurance claims handlers are free to use NCDMV or local law enforcement records to mail letters, make unsolicited telephone calls or to personally visit people's homes immediately after a car accident to persuade them to settle car accident injury claims quickly and cheaply. J.A. 2513-29 (18 pages of affidavits from clients). However, the Lawyers are subject to ruinous financial penalties if they use the same public records to contact the same motorists (by mail) to deliver their own countervailing message: you have a right to hire a lawyer to represent you, the insurance company may not have your best interests in mind, the courts of North Carolina are open to

you, and there are lawyers in North Carolina willing to review your case for free and represent you without requiring a large retainer agreement.

Strict scrutiny applies to these content and speaker based distinctions. *American Association of Political Consultants v. FCC*, 923 F.3d 159, 161 (4th Cir. 2019), *affirmed*, *Barr*, 140 S. Ct. at 2354 (the "First Amendment is a kind of Equal Protection Clause for ideas.") Even if the ban on lawyer advertising were content-neutral—and thus subject only to intermediate scrutiny—it would still violate the First Amendment. Its sweeping restrictions are hopelessly ill-tailored to the Plaintiffs' asserted interest in protecting personal privacy from unwanted mail.

Additionally, every letter at issue in this case contains a non-commercial statement informing people injured by automobile accidents that they have basic, fundamental legal rights. This mixture of commercial speech and public information compels strict scrutiny.

The Lawyers were delivering an important counter-message on a topic of public concern: the courts are open and you do not have to take the insurance company's first offer.

**B.** **The First Amendment protects the Lawyers' right to obtain these public records to send direct mail letters to Plaintiffs.**

"[S]peech by citizens on matters of public concern," like access to justice, "lies at the heart of the First Amendment." *Lane v. Franks*, 134 S. Ct. 2369, 2377

(2014). The First Amendment creates a right to receive information vital to exercising protected speech. *See, e.g., Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) (right to receive information an "inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution"); *Stephens v. Cty. of Albemarle*, 524 F.3d 485, 491 (4th Cir. 2008) ("[T]he Constitution protects the right to receive information from a willing speaker." (quotations omitted)).

No one disputes that the government has wide discretion when it decides what information to release to the public. The DPPA reflects a Congressional balancing where DMVs are forbidden from releasing certain personal information, while allowing other government agencies the latitude to release similar information when it is held as a public record outside of the DMV. The North Carolina Public Records Act ("NCPRA"), N.C. Gen. Stat. § 132-1, *et seq.*, reflects North Carolina's decision to do the latter.

The Lawyers sought to spread their message that people injured by automobile accidents have basic, fundamental legal rights, including the right to file a lawsuit in North Carolina's courts. Although the letters here are marked as required by North Carolina State Bar rules as "attorney advertising," numerous individual Defendants testified that they wanted to inform the motoring public that they had rights and that they should pause and consider talking to a lawyer before signing a settlement. J.A. 3923-25 (explaining free consultation, goal is "to give people information," warning

victims of rogue auto repair bodyshops, "we spend a fair amount of time trying to educate people just about property damage," reason for sending mail includes "it was because it was starting to become so rampant that body shops, and God knows who else, were intervening in people's life in a very negative way."); J.A. 3943-46 ("I want them to call us or someone else. We tell them right in our letter, call somebody else – call a lawyer to get some information about what's going on."), J.A. 3959, 3963 ("I'm happy if someone gets a letter [from me], and goes to another lawyer. At least they're not going to get taken advantage of and screwed by the insurance company. I'm thrilled if my letter drives them to someone to get counsel and advice."). Nagle & Associates would send a free, 244 page book to some, because most attorney websites "don't really provide people with answers." J.A. 4030.[4]

Every letter identified by Plaintiffs contained non-commercial speech informing the Plaintiffs of their rights, including their right to engage *any* attorney, not just the sender of the letter, For example:

Hardison & Cochran, J.A. 435:

If you were injured in this accident, it may be life changing event. **You may be entitled to certain damages under North Carolina law, depending upon the circumstances.**

Before you speak with the insurance adjuster, **it is a smart move to speak with an experienced attorney first.** The insurance company's adjuster has one goal: to make you go away as quickly and cheaply as possible.

**You may not even need to hire an attorney. If that is the case, we will tell you,** but there is no

---

[4] *North Carolina Auto Accident and Insurance Law, available* at https://www.amazon.com/North-Carolina-Auto-Accident-Insurance/dp/1483417557

Greve & Associates, J.A. 453:

> The insurance adjuster who contacts you represents the insurance company and not you. You have rights when you are in an auto accident, and you should take the proper steps to protect those rights. Even if you decide to use an attorney other than myself, please get legal representation so that your rights are protected.
>
> Ted. A Greve, D.C., J.D.

Estwanik & May, J.A. 456:

> Please do not let the frustration and confusion of this accident hinder you from receiving the proper medical care and legal representation for yourself and those that depend on you. If you do not seek legal advice with our firm, please seek it somewhere as these matters are time sensitive and require experience and attention to receive optimal results.

Mark Farbman, P.A., J.A. 431.

## Why do I need a lawyer?
Handling insurance adjusters can become overwhelming when combined with the car repairs, doctor appointments and bills that follow an accident. It is common sense to get legal protection by hiring your own personal injury lawyer.

Some Defendants went further.

Nagle & Associates provided a DMV-349 decoding sheet and 7 pages of useful, non-commercial information; everything from public agency telephone numbers, to advice such as taking photographs, saving pharmacy receipts, seeking medical care, securing police contact information and reviewing DMV-349s for errors, and how to consider a variety of different insurers who may be impacted by your accident (auto liability, medpay, collision coverage, health insurance, short and long term disability, uninsured and underinsured motorist coverage, accidental death & dismemberment plans, and cafeteria plans). J.A. 443-450.

Estwanik & May provided:

**What you must know when you have had an accident & What should you do immediately?**

➢ If you have been injured in an accident, see a doctor and get the care you need as quickly as possible!

➢ The Insurance Company will want to take a recorded statement from you soon after your accident. We recommend that you do not speak to any insurance agent or sign any documents without first consulting with an attorney. If you are asked to sign anything, you could be signing your rights away.

➢ Just because the Negligent Party has no insurance (Uninsured) does not mean that you cannot recover for their negligence.

➢ Just because you may be listed as the at-fault driver on a police report does not make it legally so.

➢ Just because you are a passenger in the vehicle that caused the accident does not mean that you are not entitled to a recovery for your injuries sustained in that accident.

J.A. 455. The Law Offices of Jason Taylor sent the following non-commercial information:

1. Do not give a statement, recorded or otherwise, to any insurance adjuster until you have consulted with an experienced injury lawyer. While you may be required to give a statement, the lawyer can prepare you and be with you during the statement and help with the questions and the answers.

2. While the insurance adjuster may seem friendly, it is their job to save their company money by resolving your claim as quickly and as cheaply as they can. The insurance adjuster does not represent you or your interest. Remember, they do this for a living and you do not. Consult an experienced lawyer who can put his office to work for you.

3. Do not sign a medical release form for the insurance adjuster because (a) they will get more of your medical information than they are entitled to; (b) you want to have a lawyer review and limit what information they get to protect you; and (c) you may be limiting the money you put in reserve on your case by allowing them to get the records.

4. If you are injured, please do get treatment. The insurance company will not pay for your medical treatment in advance. You must get your own medical care and do so immediately. If you are injured and you don't have health insurance, an experienced injury lawyer can help you.

5. If the insurance adjuster gets you on the phone unexpectedly, and you plan on consulting an injury lawyer, tell the adjuster you are uncomfortable talking at this time and hang up the phone.

J.A. 429.

DeMayo included a full-color magazine (with tips in interviewing any potential personal injury lawyer, 10 things to expect, common insurance company tactics, and other informational articles), a notepad with helpful tips, and a 5-page

chart to explain how to decode a DMV-349.  *Garey v. Farrin*, 21-1478 (4th Cir.),

J.A. 256-292.  This non-commercial speech is information on a topic of public

concern, and Lawyers have a right to use public documents to spread this

information.



# 10 Things

TO EXPECT (AND DO)
AFTER AN ACCIDENT



Accidents are bad enough without aftershocks. No one likes surprises, especially when things already haven't gone well, so we thought it might be helpful to share the top ten things you should anticipate happening next. That way, we may just help minimize the pain of surprise.

**Physical Pain**
Following an accident, you will likely experience unexpected pain, sometimes where you least expect it.

If you are experiencing pain after your accident, you should go to your doctor now. Failing to seek medical attention and, if appropriate, treatment, in a timely manner can cause you unnecessary pain going forward, affect healing, and even hurt any case you may have. *You aren't doing yourself any favors by not taking care of yourself if you hurt.*

**Calls from insurance companies**
The insurance companies of other parties (and even your own) are going to call, and they are going to want a recorded statement. It's recommended that you not give one until you've spoken to an attorney.

It's okay to report the accident to your insurance company, but do not give detailed or recorded statements even to your insur-ance company or agent until you have spoken to an attorney. It may seem like they would be on your side, but that's another story *(see page 24)*.

**Lawyers are going to send you advertisements**
Your mailbox will be getting a workout after your accident. Your accident is a matter of public record, so you will likely receive mailings from a variety of law offices.

In the end, you will want (and need) an attorney who is experienced with the complexities of personal injury and property damage and loss, one who has handled automotive accident cases.

You should never over sign up with any lawyer without doing your research *(see the checklist on page 11 which can help you with your decision about hiring the right lawyer).*

**Property damage**
Obviously, your vehicle may need repairs, or it could be a total loss. An attorney will be able to help you resolve the issues related to those damages and the transportation you need.

Any attorney you would want to consider engaging is not going to charge you to help deal with property damage such as this.

**Bills**
If you've been injured in an automobile accident, medical bills can pile up quickly. Your (new) job is to relax and recover, not fret about paying bills.

Simply keep all of your bills and documents together, and give them to your lawyer so they can build your case. Part of their job is trying to get you money for your medical bills, losses and for your pain and suffering.

**Settlement offers**
While you are recovering, you will get calls from insurance companies wanting you to settle your case sooner rather than later. The money they offer now may sound tempting, but remember they may be trying to settle with you for pennies on the dollar.

*Right now you can't really calculate what you'll need to cover all your expenses and losses,* and you certainly can't know what you may be able to get with the help of an experienced automobile accident lawyer.

An Insurance Research Council study suggests that people who hire lawyers for representation in their personal injury cases may receive two to three times more than people that don't hire a lawyer.

**Lots of paperwork**
Likely you will receive collec-tion letters, lien notices, documents relating to property damage, towing bills and other documents you may not even know what to do with. Again, just keep these documents together and give them to your lawyer. They can explain them and use them in your case.

**Financial problems**
With medical bills and the fact that you may have missed and/or continue to miss work, you may be in a tough financial position. Accidents just aren't fair.

Hiring the right attorney may lead to your getting the compensation you deserve, so making this decision as early as possible can be critical.

**Frustration**
Bills, pain, confusion, no wonder you are frustrated! Take a deep breath and realize that you don't have to go through this alone.

**Lots of unanswered questions**
What's my case worth? Do I even have a case? I don't have health insurance and I have bills. How do I pay them? I'm hurt and can't work, what do I do?

**We can help.** Call the Law Offices of Michael A. DeMayo and let's find the answers together. 704.333.1000.

---

# AREYou?

REALLY
In Good Hands?

YOU SHOULD KNOW

## What All Insurance Companies Want You To Do
*and why*

**Settle. Sooner rather than later.**
That's the message claims adjusters want you to hear and respond to.

Since the big hit by Hurricane Hugo in the Southeast in 1989, and the even bigger hit by Hurricane Andrew in 1992 which saw claims exceeding $15 billion and 11 insurance companies go bankrupt in its wake, the "adjusting" business has changed dramatically. And not for the better, at least as viewed by those with claims and losses.

For most of the history of insurance, that industry sent specially trained and knowledgeable people to go into the world to meet and talk with those who were making claims. They were empowered to take care of needs and cover the costs of whatever insurance was to cover. People had confidence that they would be taken care of and the offers made would be reasonable and fair. Most often that was the case.

However, in the face of such tremendous and unexpected losses by these two weather-related events, and with projections of increasingly severe storms to come, insurance companies looked for ways to cut losses and downwardly adjust payouts whenever possible.

As reported by Columbia, SC based "Post and Courier" in December 2012, an Australian insurance company, seeking ways to make settlements on claims more expedient and equitable across that country, worked with a software company to develop a way of using computers to calculate amounts, using vast existing data bases and adjusters' experience.

Eventually this product, and others like it, have become a common tool, allowing insurers an efficient way to calculate what they will offer claimants.

Unfortunately, the calculations of these products can be tweaked to create overall, percentage-based offerings, resulting in attractive savings for the companies and reduced pay outs for those who have actually experienced loss.

In 2009, it was reported in the Post and Courier, state regulators led by New York and Illinois, "began the first multi-state examination of how an insurance company uses a software [tool to handle claims." After a year and 8,500 man hours reviewing materials extracted from insurance companies by the National Association of Insurance Commissioners, regulators and a private company they hired concluded that there were no "institutional issues involving underpayment of claims." The companies under scrutiny were still fined $10 million, a paltry amount in light of the hundreds of millions of profit these same companies make annually.

Critics of the use of these software products are still raising concerns, including Mark Romano, who, according to the Post and Courier, was Allstate's top executive responsible for the use and "tuning" of the programs they're still using today.

In the end, insurance companies are far more focused on lowering payouts and preventing losses than they used to be in being fair and square, treating accident and personal injury victims with respect.

David Berardinelli, a trial lawyer in New Mexico, wrote about his battles with Allstate over their tactics in his book "From Good Hands to Boxing Gloves." To quote the Post and Courier, "Berardinelli and a growing cadre of lawyers alleged that the "good hands" strategy actually involved delaying and denying claims for several months and then making lowball offers on people felt more financial pressure. They argued that... the claim-handling programs were important parts of this profit-making plan, with some testimony showing that Allstate could reduce bodily injury payouts by $264 million a year if it used [the program]. This immediate impact would, of course, come at the immediate expense of Allstate's policy holders," Berardinelli wrote in his book."

Reported in the Post and Courier, "In it's 'Good Hands' approach, Allstate would pay... unrepresented people [those without a lawyer] within 180 days" [which was estimated as 90% of claims]. "The 10% who hired lawyers or didn't accept claim offers would get the 'Boxing Gloves' treatment. In these cases, Allstate would expect to tie up [a claimant's] payments for three to five years."

The fact is that offered settlements from many insurance companies are now suspect, likely far lower than they should be. And insurance companies have strategies to push victims to accept lowball amounts using outside pressures.

Most people may think they are being treated fairly, but many could really benefit, some significantly, by taking advantage of the expertise of a lawyer with the knowledge and experience it takes to stand up to the tactics and pressures used by large insurers.

So, go ahead and settle. Just do it when you're ready, not when they are, dangling some undervalued offer.

And, of course, consider getting the advice of a qualified lawyer first.

The Lawyers cannot be held liable for disclosing truthful information which was released to the public through official channels. *Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Cir. 2010) (re-publication of unredacted Virginia land records from county registers of deeds—which contained social security numbers—could not be punished because of First Amendment). In this case, Lawyers did exactly what *Ostergren* allows.

Recommending that victims speak with an attorney before signing a release, providing a notepad for them to make notes of their medical treatment, or sending a DMV-349 explanation chart is protected speech. And uniformly, the Lawyers used public information obtained from a third-party in order to disseminate their message.

This is the same public information which insurance companies may use under 18 U.S.C. § 2721(b)(6); J.A. 3924-25, J.A. 3961-63 (describing auto insurer tactics to settle personal injury cases). This is the quintessential example of a speaker and content based distinction.

### C. Obtaining public records is protected under the First Amendment, not unprotected conduct as Plaintiffs argue.

Plaintiffs first argue that the First Amendment does not apply at all, because the Lawyers use of these government records is unprotected conduct. Opening Br. pp. 42-43. In making this argument, Appellants cite to *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011), where the Supreme Court recognized that collecting data to prepare a message is protected by the First Amendment.

And *Sorrell* is not the first Supreme Court case regarding the collection of information to inform speech. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *see also* Joe Regalia, *The Common Law Right to Information*, 18 Rich. J.L. & Pub. Int. 89, 95-96 (2014). *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) ("Under common law, there is a presumption of access accorded to judicial records."); *see also Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.).

Similarly, in *Cox Broadcasting Corp. v. Cohn*, the Supreme Court held that the First Amendment precludes recovery for disclosure of, and publicity to, facts within the public record. 420 U.S. at 494-6. A State's "placing of information in the public domain . . . presume[s] . . . that the public interest was thereby being served." *Id.* at 495.

While the crash reports at issue here have not been placed into court records, they were public records under North Carolina law. Appellants' assertion at Opening Br. p. 42 that the First Amendment only protects speech and not conduct overlooks the protection in gathering (public) information which is integral to protected speech.

For example, the First Amendment protects a citizen's right to film "matters of public interest" on public property.  *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); see also *Fields v. City of Philadelphia*, 862 F.3d 353, 359-60 (3d Cir. 2017). Like the citizen who videorecords a police interaction in public, the Lawyers action of obtaining or collecting public police reports is protected by the First Amendment, even if it is not literal speech.

The only distinction between lawful and unlawful obtainment and use under the DPPA is the identity of the Lawyers and the message they wish to spread.  The Lawyers are not banks, insurance companies, or any number of other private individuals or companies who were favored by Congress, even though the Lawyers obtained and used the same information in furtherance of disseminating a message about the public courts of North Carolina. That distinction – the preferential treatment by Congress – violates the First Amendment.

This Court has been at the forefront of recognizing that governmental information can be kept a secret, or it can be made public.  But once the information is made public by one government agency, it is public for any user to obtain.

In three opinions issued since this case was first filed, the Fourth Circuit has consistently recognized a First Amendment right to use and obtain certain government information. *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019), *Soderberg*

*v. Carrion*, 999 F.3d 962 (4th Cir. 2021), *Courthouse News Service v. Schaefer*, 2 F.4th 318 (4th Cir. 2021).

*Fusaro v. Cogan* presented the issue of "whether Fusaro's unsuccessful attempt to obtain a copy of the (Eligible Voter) List presents a cognizable First Amendment claim." 930 F.3d at 248. This Court recognized that Fusaro had stated a claim under the First Amendment, when he was denied access to the Eligible Voter List based on content and speaker based restrictions contained in a Maryland statute. *Id.* at 255-56 ("[W]hen the government has decided to make certain information available, there are limits to its freedom to decide how that benefit will be distributed . . . . [W]hen the Maryland legislature decided to make the [voter registration list] publicly available, it could not condition access to the List on any basis whatsoever.") (quotations omitted).

In *Soderberg v. Carrion*, this Court concluded that a ban on broadcasting official court proceedings was subject to strict scrutiny because it imposed a sanction for "publishing information released to the public in official court records." 999 F.3d 962, 964 (4th Cir. 2021). Strict scrutiny was "clearly required" because the official copies of court recordings were "truthful information that was released to the public," and thus, it "cannot constitutionally be punished absent a need to further a state interest of the highest order." *Id.* at 969 (cleaned up).

Finally, in *Courthouse News Service v. Schaefer*, 2 F.4th 318 (4th Cir. 2021), this Court concluded that the First Amendment provides the public a right to timely access to newly filed civil complaints. *Id*. at 326 (comparing newly filed civil complaints to docket sheets from *Doe v. Public Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) and finding public access is "crucial to . . . the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." (cleaned up)).

*Fusaro*, *Soderberg*, and *Courthouse News* are not novel. This Circuit has long recognized that once government records are put into the public domain, the First Amendment protects a right for anyone to obtain and use them. *Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Cir. 2010). Each of those cases involved *conduct* but this Court protected it under the First Amendment.

## D. The DPPA serves as a content-based restriction on speech that cannot survive strict scrutiny.

As the Supreme Court has explained, "[c]ontent based laws [are] those that target speech based on [its] communicative content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Here, unless one of the numerous exceptions of 2721(b) applies, the DPPA criminalizes access to information and the content of the message that is ultimately delivered to the motorist. If a letter encourages an injured motorist to waive their rights, accept a quick cash settlement from an automobile insurer, and sign a written release, then the speaker (an insurance adjuster) is not subject to any liability. 18 U.S.C. 2721(b)(6) ("For use by any insurer . . . in connection with claims

investigation activities.") But, if the subject-matter of the letter encourages the driver to talk to a lawyer, carefully consider their options before signing anything, and possibly filing a lawsuit in the public courts of North Carolina, then liability under 18 U.S.C. 2724(b) adheres. The prohibition on speech thus plainly turns on "the message a speaker conveys." *Reed*, 135 S. Ct. at 2227. And the statute's other content and speaker-based distinctions only confirm that the restriction is subject to strict scrutiny.

Strict scrutiny applies to the direct mailer, even though part of the Lawyers' message is a commercial message. *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988) (stating "we do not believe that the speech retains its commercial character when it is inextricably intertwined with otherwise fully protected speech."). Instead, any Court considering an advertisement like the Lawyers' letters must give "due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech and for the reality that without solicitation the flow of such information and advocacy would likely cease." *Id.*, *citing Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980) and *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 959-960 (1984). When speech contains both elements of commercial speech and fully protected speech such as speech on a topic of public concern, strict scrutiny applies. *Id.* (when "the component parts of a single speech

are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase. . . . Therefore, we apply our test for fully protected expression.").

E. **The Lawyers' actions – using government records to send targeted mail – have long been protected by the First Amendment.**

The right to use the mail to send pamphlets is almost as old as the First Amendment itself. During the abolitionist mail controversy of 1835 – when the American Anti-Slavery Society mailed thousands of professionally-printed anti-slavery pamphlets and posters into the slaveholding South which caused racist mobs to besiege a post office – Congress considered taking legislative action. "Attack On the Post Office, Charleston, S.C.," *The News Media and the Making of America, 1730-1865*, accessed August 1, 2021; https://americanantiquarian.org/earlyamericannewsmedia/items/show/48.

To quell the unrest, President Andrew Jackson advocated a ban on the mailers. Today that would be akin to the President calling for a content-based restriction on speech. Congress viewed calls to censor the mail as unconstitutional, and so the literature of the American Anti-Slavery Society continued to flow from North to South, spreading its message about the horrors of slavery and bringing the issue into wider public view. Register of Debates in Congress, *Report of the Minority of Committee on Post Offices and Post Roads on the President's Message*, 24th Cong. 1st Sess. (1836), 2944 ("[We] have not been able to come to the conclusion that

Congress possesses the constitutional power to restrain the mail circulation of the publications specified in the message. On the contrary, they believe that any legislation for that purpose would come in direct conflict with that clause in the Constitution which prohibits Congress from making any law 'abridging the freedom of speech . . .'"); Crutis, The Curious History of Attempts to Suppress Antislavery Speech, Press, and Petition in 1835-37, 89 Nw. U. L. Rev. 785, 832-834 (1994-95).

The First Amendment continues to prohibit the government from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted). "Content-based regulations are presumptively invalid," and may only be justified if they are the least restrictive means of furthering a compelling government interest. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

### F. Section 2721(b)'s Exceptions Demonstrate the DPPA is Content-Based.

The DPPA's restrictions turn on the "communicative content" the speaker conveys. The statute defines prohibited speech by its purpose:

- whether or not an insurance company is using it "in connection with claims investigation activities" [2721(b)(6)],

- whether or not a towing or impound yard is providing notice [2721(b)(7)], or

- whether or not a private toll bridge or road is sending the message. [2721(b)(10)].

Those types of speech are favored by the DPPA, and thus allowed. A countervailing message – that you do not have to take the insurance company's first offer, that your car was illegally towed by a predatory towing operation, or that you might not actually owe the private toll payment – is prohibited, even though it was based on the same public records, conveyed to the same motorist, but merely advocates for a contrary position. The DPPA proscribes speech on the basis of whether the content of the speech is one approved by Congress. *Barr v. AAPC*, 140 S. Ct. at 2341.

The DPPA also discriminates on the basis of viewpoint, which is the most "blatant" and "egregious form of content discrimination." *Reed*, 135 S. Ct. at 2229-30 (citation omitted). The DPPA's scope of liability depends on the point of view of the speaker. For example, if a lawyer obtains public records and sends a letter to provide "notice to the owners of towed or impounded vehicles" then the lawyer is immune from liability under 18 U.S.C. 2721(7). If, however, the lawyer uses the same public records to send a letter to the same person providing notice ***and*** explaining DWI pre-trial diversion programs, "innocent owner petitions" to release vehicles from seizure under N.C.G.S. 20-28.3(e1), or that the motorist can hire an attorney, then she is subject to serious financial penalties. 18 U.S.C. § 2724. The

lawyer could have to pay $2,500 for using the same public records because she conveyed a different viewpoint about the records.

Additionally, the DPPA's exception for government speech independently renders enforcement of the statute against the Lawyers direct mail as content based. Section 2721(b)(1) broadly exempts from liability any use by any federal, state, or local government entity. This is a classic speaker-based favoritism. *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019), *affirmed*, *Barr*, 140 S. Ct. 2335 (2020).

The DPPA thus reflects Congress's view that what the government has to say is more valuable than the speech of ordinary citizens. Such speaker-based favoritism warrants strict scrutiny of the entire statute. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) (observing that "speaker-based laws demand strict scrutiny" when, as here, "they reflect the Government's preference for the substance of what the favored speakers have to say"); *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional."); *Barr*, 140 S. Ct. 2335 (2020) (applying strict scrutiny to exception for government speakers).

### G. Appellants argue for rational basis review, but the proposed ban on Lawyer direct mail advertising requires strict scrutiny.

Plaintiffs have not proven a compelling government interest in limiting access by Lawyers to crash reports. It is their burden to produce such evidence, and they have failed to do so.

Because the DPPA's restriction on attorney speech is content-based, it triggers strict scrutiny. Even if a governmental interest is compelling in the abstract, when "First Amendment rights" are at issue, that interest "must be pursued by means that are neither seriously underinclusive nor seriously overinclusive." *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 805 (2011). The DPPA is fatally defective on both grounds.

The DPPA's First Amendment infirmities are even more extensive than those in *Barr*. Not only does the DPPA improperly favor government speakers, its thirteen (13) other exemptions undermine any governmental interest in protecting names associated with addresses. *See, Barr*, 140 S. Ct. at 2349 ("This is not a case where a restriction on speech is littered with exceptions that substantially negate the restriction.").

If, on the other hand, the Plaintiffs' putative "governmental" interest is in "preventing stalkers and criminals from acquiring personal information from state DMVs" Opening Br. p. 49 (cleaned up), then the DPPA is dramatically overinclusive. The DPPA was passed by Congress with a stated goal of protecting

against stalkers who might use DMV records to locate their victims. This rationale fails when applied to the statute itself and the facts presented here. A putative stalker would have to wait – years or decades – until their victim was involved in a car accident to find the home address on a crash report at issue. Similarly, the exact circumstances that led to the murder of Rebecca Shaffer, where a stalker obtained her personal home address from State DMV records, is not prevented by the DPPA at all. Robert Bardo, who murdered her, obtained her address by using a private investigator; but under the DPPA as passed by Congress, a specific exception in Section 2721(b) permits a private investigator to obtain State DMV records. Suspect in Actress Murder Hired Private Eye to Get Her Address, Los Angeles Times, July 21, 1989, available at https://www.latimes.com/archives/la-xpm-1989-07-21-mn-4387-story.html.

Thus, the DPPA would have served as no deterrent or obstruction to the exact crime that it was enacted to prevent. In short, the DPPA is not "narrowly tailored" to promoting either a broad privacy interest in one's name and address (which is widely available from other sources), or a narrower privacy interest in thwarting stalkers and criminals. Regardless of how the asserted privacy interest is defined, a prohibition of attorney direct-mail is an ill-fitting means of furthering that interest. It certainly is not the least restrictive means of doing so, rather than do-not-mail lists, an absolute prohibition on releasing crash reports, and reasonable restrictions on the

use of this information that apply equally to all private companies (whether they are insurance companies or personal injury law firms). The DPPA plainly fails strict scrutiny.

## CONCLUSION

Based on the forgoing, the Court should affirm the District Court.

WOMBLE BOND DICKINSON (US) LLP

/s/ Reid C. Adams, Jr.
Reid C. Adams, Jr.
N.C. State Bar No. 9669
Cal.adams@wbd-us.com
Jonathan R. Reich
N.C. State Bar No. 41546
Jonathan.reich@wbd-us.com
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660


FOX ROTHSCHILD LLP

/s/ Troy D. Shelton
Bradley M. Risinger
N.C. State Bar No. 23629
brisinger@foxrothschild.com
Matthew Nis Leerberg
N.C. State Bar No. 35406
mleerberg@foxrothschild.com
Troy D. Shelton
N.C. State Bar No. 48070
tshleton@foxrothschild.com

Jeffrey R. Whitley
N.C. State Bar No. 46497
jwhitley@foxrothschild.com
434 Fayetteville Street, Suite 2800 (27601)
P.O. Box 27525
Raleigh, North Carolina 27611
Telephone:  (919) 755-8700
Facsimile:   (919) 755-8800


BAILEY & DIXON

/s/ David Coats
David Coats
N.C. State Bar No. 16162
dcoats@bdixon.com
434 Fayetteville Street, Suite 2500
Raleigh, North Carolina 27601
Telephone:  (919) 828-0731
Facsimile:   (919) 719-9522

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of
    the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
    statement, table of contents, table of citations, statement regarding oral
    argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*11,784*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines
    of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using
    [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name
    and version of word processing program*] with [*state number of characters
    per inch and name of type style*].


Dated: November 15, 2021                 /s/ Reid C. Adams, Jr.
                                         *Counsel for Appellees*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 15th day of November, 2021, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Reid C. Adams, Jr.
*Counsel for Appellees*